UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br><br>SEAN DUNNE<br>    Debtor.<br><br>―――――――――――――――――<br><br>SEAN DUNNE,<br>    Appellant,<br><br>v.<br><br>RICHARD M. COAN, TRUSTEE, *et al.*<br>    Appellee. | No. 3:17-cv-1399 (MPS) |

## MEMORANDUM OF DECISION

Appellant and bankruptcy debtor Sean Dunne ("Dunne") appeals from an order by the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") granting appellee and Bankruptcy Trustee Richard M. Coan's (the "Trustee's") motion to compel Dunne to produce certain emails under Fed. R. Civ. P. 37 and 45. For the reasons that follow, I AFFIRM in part and VACATE and REMAND in part for further consideration.

### I.   RELEVANT BACKGROUND

The following facts are drawn from the parties' briefs and the record on appeal. On March 29, 2013, Dunne filed a voluntary petition for Chapter 7 bankruptcy protection in the Bankruptcy Court. (ECF No. 15 at 1.) On March 27, 2015, the Trustee commenced an adversary proceeding in the same court. (*Id.*) This appeal arises from a subpoena issued to Dunne in the adversary proceeding, to which he is not a party.

1

On July 25, 2016, the Trustee served a Rule 45 subpoena on Dunne, but for months Dunne failed to make any response despite his counsel's assertion in a separate bankruptcy proceeding in Ireland that a production was imminent. (*Id.* at 1–2, 9–24.) On December 19, 2016, the Trustee filed a motion to compel. (Dkt.[1] No. 246.) The motion sought an order compelling production of documents responsive to the subpoena, an order holding Dunne in contempt, and an order awarding the Trustee reasonable attorney's fees and costs for bringing the motion. (*See* Dkt. No. 246 at 1–20.) The Bankruptcy Court held a hearing on January 3, 2017, at which Dunne agreed to produce the documents two days later; the Bankruptcy Court warned Dunne's lawyer that if he did not produce the documents he said he had in his possession by then, the Court would impose attorneys' fees as sanctions. (Dkt. No. 260 at 34–35.) On January 5, 2017, Dunne produced 1,563 pages of documents to the Trustee, which did not include any email documents. (Dkt. No. 313 at 2.) At the January 3 hearing, the Court also allowed Dunne to file a motion to quash by January 10, 2017, to challenge aspects of the subpoena counsel viewed as overbroad or burdensome—even though the deadline for serving objections set forth in Rule 45 had long since expired. (Dkt. No. 260 at 35–36); *see* Fed. R. Civ. P. 45(d)(2)(B). Dunne filed a motion to quash on January 10, 2017, asserting, among other things, that he had "demonstrated his good-faith by producing all responsive documents that he has identified to date . . . ." (Dkt. No. 256 at 1–2.)

Shortly thereafter, the Bankruptcy Court issued a Scheduling Order requiring Dunne's counsel to file by February 3, 2017 "an affidavit certifying that all documents responsive to the Discovery Motions within the possession and/or control of the Debtor have been produced to the

---

[1] "Dkt." refers to the docket number in the Adversary Proceeding, *Coan, Trustee v. Killilea et al.*, Adversary Proceeding No. 15-05019, as reflected by the record on appeal filed in this case (ECF No. 4.)

2

Trustee." (Dkt. No. 271 at 1.) After Dunne failed to do so, on February 24, 2017, the Bankruptcy Court issued an Order to Show Cause. (Dkt. No. 277.) Dunne filed a response on February 27, 2017 asserting that he had misunderstood the Court's scheduling order and attached the certification he had previously provided to the Trustee. (Dkt. No. 279.) That Certification, dated February 2, 2017, provided as follows:

> I, Sean Dunne, certify that I have conducted a good faith search to locate documents responsive to the requests for production contained in the July, 2016 subpoena served upon me, and that all responsive documents located as a result of said good faith search have been provided to counsel for production.
>
> I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

(Dkt. No. 279.) This appeared to quell the controversy until months later, on July 5, 2017, when the Trustee filed a Renewed Motion to compel under Fed. R. Civ. P. 37 and 45. (Dkt. No. 313.) The Trustee attached two exhibits to that motion that contained emails to and from Dunne between 2011 and 2012 at the email address sean.dunnebb@gmail.com (the "BB Gmail Account"). (Dkt. No. 313 at 12–60.) The Trustee argued that these emails, which were obtained from third parties in other actions pertaining to Dunne's bankruptcy, as well as Dunne's previous testimony that he regularly used at least one email account, showed that Dunne's production of documents in response to the subpoena was deficient, because it did not contain any emails. (Dkt. No. 313 at 7–8.) The renewed motion again sought an order compelling production, a finding of contempt, and attorneys' fees. (Dkt. No. 313 at 10.) Dunne filed an objection on July 26, 2017 asserting, among other things, that the BB Gmail Account had long since been closed because of hacking. (Dkt. No. 315 at 2–3.) Dunne did not provide an affidavit or any other evidence to support the assertions made in his objection. (*Id.*)

3

The Bankruptcy Court held a hearing on July 27, 2017 on the Trustee's renewed motion to compel. (Dkt. No. 361.) At the hearing, the Trustee's counsel provided additional emails to the Bankruptcy Court from 2016 and 2017 to and from another of Dunne's email accounts, SeanDunne366@gmail.com (the "366 Gmail Account"). (Dkt. No. 361 at Tr. 10–13.) Counsel for Dunne argued that both email accounts were hacked and had been closed, but did not present any additional evidence at the hearing, relying instead on Dunne's February 2, 2017 certification. (Dkt. No. 361 at Tr. 20:12–21:19.) The Bankruptcy Court orally granted the Trustee's motion to compel, found Dunne in contempt, indicated that it would award attorneys' fees, and ordered that Dunne would be in further contempt if he did not cooperate with the Trustee's efforts to get the emails from a third-party like AT&T or Gmail. (Dkt. No. 361 at 45:25–46:19.) At the court's request, the Trustee submitted a draft order on July 28, 2017 (Dkt. No. 327), which the Bankruptcy Court ordered in substantially identical form on August 2, 2017. (Dkt. Nos. 329 (the "Order").)

The Order set forth factual findings reciting the above history and that "Dunne did not claim that he produced email or that email was not responsive to the Subpoena;" "Dunne's Certification is the only basis provided for not producing email to the Trustee;" "Dunne provided no affidavit or certification in response to the Motion, but instead relied upon the Certification at the Hearing;" "Dunne's Certification does not state: (i) that no email responsive to the Subpoena existed; or (ii) that emails were not reasonably accessible because of undue burden or cost;" and that "Dunne did not establish cause for failing to obey the Subpoena and produce responsive email, including the email the Trustee received from other sources." (Dkt. No. 329 at 2, ¶¶ 6–10.) Based on those findings, the Bankruptcy Court ordered as follows:

- **ORDERED:** Pursuant to Fed. R. Bankr. P. 9016, incorporating Fed. R. Civ. P. 45(g), Dunne is in contempt for failing to obey the Subpoena; and it is further

4

- **ORDERED:** Pursuant to Fed. R. Bankr. P. 7037, incorporating Fed. R. Civ. P. 37, Dunne shall produce all documents responsive to the Subpoena, which production shall include a list of all email accounts that Dunne has used since January 1, 2010; and it is further

- **ORDERED:** Pursuant to Fed. R. Bankr. P. 9016, incorporating Fed. R. Civ. P. 45(e)(1)(D), the Trustee shall serve a copy of this order on the appropriate subsidiaries or divisions of Google and AT&T, and Google and AT&T shall produce all electronic mail from the accounts seandunnebb@gmail.com and seandunne366@gmail.com; and it is further

- **ORDERED:** Dunne shall cooperate in the production of the electronic mail from said accounts; and it is further

- **ORDERED:** Pursuant to Fed. R. Bankr. P. 7037, incorporating Fed. R. Civ. P. 37(a)(5), Dunne shall pay the Trustee's reasonable expenses and attorneys' fees in connection with the Initial Motion and the Motion. The Trustee shall file an affidavit setting forth his claim for reasonable expenses and attorneys' fees on or before August 18, 2017.

(Dkt. No 329 at 2–3.) On August 16, 2017, Dunne filed a notice of appeal of the Order to this Court. (Dkt. No. 336.)

## II. STANDARD OF REVIEW

This Court has jurisdiction of this bankruptcy appeal under 28 U.S.C. § 158(a)(1). A Bankruptcy Court's contempt order under Rule 45(g), as incorporated by Fed. R. Bankr. P. 9016, is reviewed for abuse of discretion. *See In re Lehman Bros. Holdings Inc.*, 526 B.R. 481, 495 (S.D.N.Y. 2014), *as corrected* (Dec. 29, 2014) (citation omitted), *aff'd*, 645 F. App'x 6 (2d Cir. 2016). However, this review is "'more exacting than under the ordinary abuse-of-discretion standard because a [bankruptcy] court's contempt power is narrowly circumscribed.'" *Id.* The Bankruptcy's Court order compelling discovery is reviewed under an abuse of discretion standard as well. *See SBC 2010-1, LLC v. Morton*, 552 F. App'x 9, 12 (2d Cir. 2013) ("We review a district court's imposition of sanctions, discovery rulings, and rulings on motions to compel for abuse of discretion."). "An abuse of discretion occurs when a decision relies on an erroneous view of the law, when a decision relies on a clearly erroneous assessment of evidence, or when a decision

5

otherwise 'cannot be located within the range of permissible decisions.'" *In re Lehman Bros. Holdings Inc.*, 526 B.R. at 496–97 (footnote and internal citations omitted).

## III. DISCUSSION

Dunne argues that the Bankruptcy Court erred in: (1) determining that he failed to comply with the subpoena; (2) ordering that Dunne was in contempt and that sanctions should be awarded; and (3) ordering non-parties Google and AT&T to produce all emails from Dunne's accounts. (ECF No. 11 at 8–17.)[2] I address each argument in turn.

### A. The Bankruptcy Court's Determination that Dunne Failed to Comply With the Subpoena

Dunne argues that the Bankruptcy Court abused its discretion in determining that he had failed to comply with the subpoena because the Bankruptcy Court improperly shifted the burden to Dunne to demonstrate that he had no practical ability to obtain or produce emails from the BB and 366 Gmail Accounts. (ECF No. 11 at 8.) I disagree, because Dunne needed to demonstrate that his email accounts—of which he made no mention in his February 2, 2017 certification— were not within his custody, possession, or control.

A Rule 45 subpoena may, as it did here, command the recipient to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(ii). Where control is contested in the Rule 45 context, the "burden is on the party seeking discovery to make a showing that the other party has control over the materials sought" but 'control' is defined broadly "so as to permit discovery from a non-party with 'the legal right, authority, or practical ability to obtain the materials sought upon demand.'" *In re: Application of Passport Special Opportunities Master Fund, LP for an*

---

[2] The parties dispute to what degree Dunne has waived arguments listed in his statement of the issues; I address all the arguments adequately briefed in Dunne's opening brief.

6

*Order Compelling Compliance with a Subpoena Issued to Deloitte Touche Tohmatsu Ltd. Pursuant to 28 U.S.C. § 1782*, No. 16 MISC. 33(PAE), 2016 WL 844833, at *4 (S.D.N.Y. Mar. 1, 2016) (citation omitted). Generally, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (citations and internal quotation marks omitted).[3] The burden then shifts back to the party seeking production to "cite to specific evidence to challenge [the resisting party's] assertions that no additional responsive documents exist." *Id.* If that showing is made, "the burden [] shifts to [the party resisting discovery] to show specifically where they have searched and why these documents are not, in fact, within their custody, possession, or control." *Id.*

The Bankruptcy Court allocated the burdens appropriately here. After the Trustee's first motion to compel, the Bankruptcy Court required that Dunne submit an "affidavit, on or before February 3, 2017, certifying that all documents responsive to the Discovery Motions within the possession and/or control of the Debtor had been produced to the Trustee." (Dkt. No. 277.) In

---

[3] The meaning of control is the same in Rule 37, which *Mason Tenders* relies on, and Rule 45. *See First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998). I should also note that disputes about "control" or "access" to documents—including those in the cases on which Dunne relies—usually arise when there is some plausible reason to believe that the subpoenaed party would not ordinarily have control, such as when documents are generated by a third party or relate to another entity. *E.g., In re Application of Passport Special Opportunities*, 2016 WL 844833, *3–4 ("This principle applies where discovery is sought from one corporation regarding materials . . . in the physical possession of another, affiliated corporation . . . . [W]here discovery is sought from an entity for documents in the physical possession of another, affiliated entity, it is the discovering party's burden to demonstrate that the requested entity has either the legal right or the practical ability to obtain the documents in question from their custodian.") (internal citations and modifications omitted). It is not at all clear, however, that this principle should apply here, *i.e.*, that the discovering party should bear the initial burden, where the issue is whether an individual has access to his own emails. Nonetheless, because the outcome is the same, I apply this traditional burden-shifting framework.

response, Dunne filed the February 2, 2017 certification that he had "conducted a good faith search to locate documents responsive [to the July 2016 subpoena] . . . and that all responsive documents located as a result of said good faith search have been provided to counsel for production." (Dkt. No. 279 at 5.) This certification said nothing about emails or any limitations on Dunne's control over or access to his email accounts or any other documents. Nonetheless, I will assume for these purposes that this broad certification carried Dunne's initial burden to show that he had produced all responsive documents within his control. But the Trustee then renewed its motion to compel and attached specific evidence to rebut Dunne's assertion that all responsive documents within his control had been produced—specifically, two exhibits with emails to and from Dunne's BB Gmail Account, in addition to citations to Dunne's previous testimony concerning his email accounts. (Dkt. No. 313 at 7, 12–60.) *See Mason Tenders*, 318 F.R.D. at 43 (finding that witness' testimony and tax returns about subsequent financial years constituted sufficiently specific evidence that financial documents concerning those years may exist at other locations). Accordingly, the Bankruptcy Court correctly placed the burden on Dunne to show that the BB Gmail Account was in fact no longer in his control. *See id.* (granting motion to compel to produce documents or "in the alternative, explain specifically what efforts were undertaken to find relevant documents and why relevant documents do not exist, if in fact, that is the case").[4] In response, Dunne provided no evidence—affidavits or otherwise—to indicate that

---

[4] Dunne also argues that the Bankruptcy Court did not consider whether Dunne "had the practical ability to obtain such emails or any emails from the 'bb Gmail account.'" (ECF No. ECF No. 16 at 4.) It is commonly accepted that an individual has "control" over emails in a personal email account hosted by a third-party company, and following the Trustee's specific evidence it became Dunne's burden to show that he did *not* have such ability. *See, e.g., The Sedona Conference, The Sedona Conference Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control,"* 17 Sedona Conf. J. 467, 479 (2016) ("[W]hen an individual signs up with an ISP (internet service provider) for his/her personal email account . . . the Rule 34 and Rule 45 terms "possession" and "custody" are fairly straightforward and do not present a problem").

the email accounts were hacked or deleted, *i.e.*, no longer in his possession, custody or control. Dunne instead rested entirely on his initial affidavit—which gave no hint that Dunne had failed to search his email accounts because they were allegedly no longer under his control and, in fact, did not even mention emails. (*See* Dkt. No. 361, July 27, 2017 Hearing Tr. 19:3-5 ("[T]here's no evidence of an explanation. All there is an assertion that's made by [counsel], not by Mr. Dunne.").) Because Dunne failed to provide any evidence demonstrating his lack of control, the Bankruptcy Court correctly concluded that Dunne had failed to comply with the subpoena by failing to produce relevant emails within his control.[5]

The cases Dunne relies on heavily for the opposite proposition, *Shcherbakovskiy v. Da Capo Al Fine, Ltd* and *Simuro v. Shedd,* actually demonstrate that Dunne needed to provide evidence to show lack of control. (ECF No. 11 at 8–9; ECF No. 16 at 5.) In *Shcherbakovskiy*, the Second Circuit held that "a finding of control cannot be sustained" where the party arguing that Russian law precluded production of the requested documents provided an affidavit stating that he was "a minority shareholder [in a Russian company and could not overturn a Board vote prohibiting production] and Russian law prevents his production of the documents." 490 F.3d 130, 139 (2d Cir. 2007). And in *Simuro*, the expert from whom discovery was sought filed evidence to support his motion to quash stating that "he does not have [the requested] transcripts of his depositions or testimony." 2014 WL 5776149, at *2 (D. Vt. Nov. 6, 2014). He therefore failed to sustain his burden of showing that documents one would ordinarily expect to be accessible to him—his emails—were not in fact accessible. Unlike in these cases, Dunne offered

---

[5] To the extent Dunne argues that he was not on notice about the 366 Gmail Account and therefore could not have been found to violate the subpoena (ECF No. 11 at 10), Dunne was unquestionably on notice that he needed to either produce *any and all* e-mails, and he provided no evidence indicating he lacked control over *any* email account.

*no* proof that he lacked control over the BB and 366 Gmail Accounts. The Bankruptcy Court thus did not abuse its discretion by finding that Dunne had not complied with the subpoena.[6]

### B. The Bankruptcy Court's Contempt Finding and Sanctions Award

Dunne argues that the Bankruptcy Court abused its discretion by holding Dunne in contempt and issuing sanctions because (1) no order compelled Dunne to produce the documents, (2) the Bankruptcy Court failed to apply the appropriate standard for civil contempt, and (3) the Bankruptcy Court erred in awarding attorney's fees. (ECF No. 11 at 15.)

#### *1) No Court Order Compelling Compliance*

Dunne challenges the Bankruptcy Court's contempt finding under Rule 45(g) for "failing to obey the Subpoena," not a prior court order. (Dkt. No. 329.) Fed. R. Civ. P. 45(g) provides that "[t]he court . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Although the Rule's plain text authorizes a court to hold a party in contempt simply for failing to comply with a subpoena, "courts in the Second Circuit have often held that . . . a court should first issue an order compelling compliance with the subpoena." *New Falls Corp. v. Soni*, No. CV166805ADSAKT, 2017 WL 9732100, at *1 (E.D.N.Y. Oct. 30, 2017) (collecting cases); *see Pateley Assocs. LLC v. Pitney Bowes, Inc.*, No. 3:08 CV 1607 (JBA), 2009 WL 10689332, at *3 n.14 (D. Conn. Sept. 10, 2009) (declining to hold non-party in contempt and issue sanctions prior to issuing an order to compel). This practice is followed because "[a]n order of contempt leading to the impositions of sanctions is a drastic remedy" and "[b]efore imposing sanctions on

---

[6] I do not rely on the Trustee's arguments about the applicability of Fed. R. Civ. P. 45(e)(1)(D), because that rule applies to "Inaccessible Electronically Stored Information" due to "undue burden or cost," not lack of control, and it was not cited in this portion of the Bankruptcy Court's order. (ECF No. 15 at 15–17, 20; Dkt No. 329.) Because of my conclusion above, I also do not reach the Trustee's argument about Dunne's duty to cooperate as a bankruptcy Debtor. (ECF No. 15 at 20.)

a person charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard." *Sanchez v. Pathmark Stores, Inc.*, No. 04CIV1159GBDRLE, 2009 WL 398103, at *1 (S.D.N.Y. Feb. 17, 2009).

Here, however, Dunne had both notice and multiple opportunities to be heard. This is thus the "rare [situation]" where the court should "use contempt sanctions without first ordering compliance with a subpoena." Fed. R. Civ. P. 45(g) advisory committee's note to 2013 amendment. In this case, the Bankruptcy Court was extensively involved to ensure Dunne's compliance, from the initial motion to compel in December 2016 through its July 2017 hearing on the Trustee's renewed motion to compel. (*See* Dkt. No. 246 (original motion to compel), 260 (January 3, 2017 hearing), 271 (scheduling order), 277 (order to show cause), 313 (renewed motion to compel), 329 (Order)). At the January 2017 hearing, the Bankruptcy Court specifically warned Dunne's counsel to produce the documents that he represented as in his possession and to file an objection to the rest of the subpoena. (Dkt. No 260 at Tr. 35:4-36:14.) The Bankruptcy Court also took the unusual step of requiring that Dunne's counsel certify that all responsive documents had been produced, a certification that Dunne himself later provided under penalty of perjury. (Dkt. Nos. 271, 279.) Dunne was therefore on clear notice that he had an obligation to produce *all* documents, email or otherwise—it is hard to see how the Bankruptcy Court could have done more. Moreover, the Trustee's original and renewed motions to compel put Dunne on notice that contempt and sanctions were possible for Dunne's failure to comply. (Dkt. No. 313 at 9–10.) Finally, Dunne was given several opportunities to be heard on why he should not be found in contempt—in his motion to quash responding to the Trustee's motion to compel, which from the beginning had specifically sought a finding of contempt (Dkt. No. 246 at 5–6), his response to the Court's order to show cause (Dkt. No. 279), his response to the renewed

11

motion to compel, and at the July 2017 hearing itself. (Dkt. No. 325.) Under similar circumstances, courts in this Circuit have found that contempt and sanctions are appropriate even in the absence of a court order specifically directing compliance. *See PaineWebber Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) (imposing sanctions for non-parties' failure to comply with a subpoena where "both parties admit that they received notice of the subpoenas," "neither party raised objections to the subpoenas at any time," and non-parties did not adequately respond to the motion for contempt); *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-CV-2902-JEC, 2014 WL 4308355, at *1 (S.D.N.Y. Aug. 26, 2014) (granting motion to compel, holding non-party in contempt under Rule 45(g), and awarding costs and fees under Rule 37). Because Dunne was on notice of the possibility of contempt in light of the Court's continued involvement and the Trustee's motions, and he was given several opportunities to be heard, the Bankruptcy Court did not abuse its discretion by holding Dunne in contempt for failing to obey the subpoena.

    *2) Contempt Standard and Finding*

Dunne asserts that the Bankruptcy Court applied the incorrect standard of contempt. (ECF No. 11 at 13–14.) "To establish contempt, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir. 2003); *Gesualdi v. Hardin Contracting Inc.*, No. 09-CV-0683(SJF)(AKT), 2016 WL 2654068, at *2 (E.D.N.Y. May 6, 2016) (applying test to failure to comply with subpoena in Rule 45(g) context). "It need not be established that the violation was willful." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir. 2004).

Dunne's arguments primarily rest on the same grounds as discussed above—that there was no "order," let alone a clear and unambiguous one, with which Dunne clearly failed to comply. (ECF No. 11 at 13–14.) I disagree for the same reasons—in essence, Dunne failed to comply with the July 2016 subpoena after multiple opportunities and warnings. In addition, the Bankruptcy Court made adequate factual findings to support its contempt order. (*See* Dkt. No. 329 at 2 ¶¶ 1–10; Dkt. No. 361 at Tr. 42:23–46:3.)

The July 2016 subpoena was clear and unambiguous—Dunne had to produce "all documents and communications" on several subjects, and both "documents" and "communications" were defined to include email. (Dkt. No. 246 at 12 ¶¶ 1–2 (defining terms to include "email" and "electronic transmission of fact"), 15–24.) The Bankruptcy Court's orders related to Dunne's duties of production under the subpoena were clear too: at the January 2017 hearing, the Bankruptcy Court ordered Dunne's counsel to produce the documents he represented were in his possession but that he could object to the remainder of the subpoena, which Dunne did in the form a motion to quash—one that made no mention that Dunne lacked access to his email accounts (Dkt. No. 260 at Tr. 35:4-36:14; *see* Dkt. No. 256 at 1–2); and in its Order to Show Cause, the Court ordered that Dunne's counsel file a statement certifying under penalty of perjury that all documents "responsive to the Discovery Motions within [Dunne's] possession/and or control" were produced. (Dkt. No. 277.) Finally, Dunne makes no argument in his attack on the contempt finding that the subpoena was unclear. (*See* ECF No. 11 at 15–18.)

The Trustee's proffered proof of non-compliance for both the subpoena and its subsequent orders was clear and convincing—a series of responsive emails to and from the BB Gmail Account (Dkt. No. 313 at 12–60), Dunne's cited testimony (*id.* at 7), and further emails shown at the July 2017 hearing to and from the 366 Gmail Account. (Dkt. No. 361 at Tr. 10:19–

13:8; *see also* Dkt. No 329 at 2, ¶ 5 (Order)) These emails not only demonstrated Dunne's non-compliance with the July 2016 subpoena but also strongly indicated that Dunne's court-ordered certification of compliance was false or at least misleading. (Dkt. No. 361 at Tr. 42:23–46:3; Dkt. No. 329 at 2, ¶ 9 ("Dunne's Certification does not state: (i) that no email responsive to the Subpoena existed; or (ii) that emails were not reasonably accessible because of undue burden or cost").)

Finally, because Dunne had not only failed to comply with the Subpoena since July 2016 but still offered no evidence at the July 2017 hearing beyond mere assertions that his accounts had been hacked or closed, the Bankruptcy Court correctly found that Dunne had failed to comply, in a reasonable manner or otherwise. (ECF No. 361 at Tr. 34:4–8 ("[Y]ou would have to show why what you did was enough and there's an excuse as to why these weren't produced. And as I said, your documents make assertions, but there's no evidence to support those assertions."); *id.* at Tr. 45:9-11 ("[If] he had additional evidence to bring before the Court, today was the day to do it and he didn't do it."); Dkt. No. 329 at 2, ¶¶ 5–10 (detailing Dunne's lack of compliance.) Accordingly, the Bankruptcy Court did not abuse its discretion in finding Dunne in contempt under Rule 45(g). *See In re Corso*, 328 B.R. 375, 385 (E.D.N.Y. 2005) (affirming Bankruptcy Court's contempt finding under Rule 45(g) because "all of the prerequisites of a finding of contempt and the imposition of sanctions have been met"); *Gesualdi*, 2016 WL 2654068, at *2 (finding non-party in contempt where plaintiffs "have submitted clear and convincing proof that [non-party] has failed, without adequate excuse, to obey the subpoena . . . and this Court's various orders related to it, all of which were clear and unambiguous").[7]

---

[7] Dunne's opening brief references the committee notes to Rule 45, Fed. R. Civ. P. 45(g) advisory committee's note to 2013 amendment ("The rule is also amended to clarify that contempt sanctions may be applied to a person who disobeys a subpoena-related order, as well as

*3) Attorney's Fees as Sanctions*

Dunne challenges the Bankruptcy Court's reliance on Rule 37 in ordering sanctions. (ECF No. 11 at 11–13.) The Bankruptcy Court ordered under Fed R. Civ. P. 37(a)(5) that Dunne pay "the Trustee's reasonable expenses and attorneys' fees in connection with the Initial Motion and the [Renewed] Motion." (Dkt. No. 329 at 2; Dkt. No. 361 at Tr. 9:10-11 ("If a motion to compel is granted, the rule says attorney's fees shall be awarded. That's what it says.").

Although Rule 37(a)(5) does authorize attorney's fees, that provision does not apply here. Though the rule uses the terms "parties," "persons," and "deponents," Rule 37 is targeted at parties and their representatives who resist discovery. *See* Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment ("Rule 37 provides generally for sanctions against parties or persons unjustifiably resisting discovery."). Accordingly, the majority of district courts in the Circuit have found that Rule 37 cannot support sanctions for a non-party's failure to comply with a Rule 45 subpoena. *See Madigan v. Bronstein*, No. 18MC61, 2018 WL 1768283, at *2 (S.D.N.Y. Apr. 12, 2018) ("[T]he majority of courts in this Circuit that have analyzed whether motions to compel compliance with a non-party subpoena under Rule 45 may be brought under the auspices of Rule 37 have answered that question in the negative because Rule 37 applies to a *party's* failure to comply with a discovery order, while Rule 45 addresses a *non-party's* failure to comply with a discovery subpoena." (emphasis in original)); *Jalayer v. Stigliano*, No. CV102285LDHAKT, 2016 WL 5477600, at *3 (E.D.N.Y. Sept. 29, 2016) ("[T]he court has no

---

one who fails entirely to obey a subpoena"), and he expressly raises the argument in his reply brief that Dunne did not *completely* fail to comply with the subpoena because he produced over 1,500 pages of documents (ECF No. 16 at 7). To the extent Dunne has not waived the argument that contempt is authorized only where a non-party fails to respond to a subpoena at all, by failing to raise it clearly in his opening brief, such an argument is not supported by Rule 45's plain language. *See In re Sealed Case*, 141 F.3d 337, 343 (D.C. Cir. 1998) ("[I]f the rule and the [Advisory Committee] note conflict, the rule must govern.") (citation and internal quotation marks omitted).

15

authority to sanction [non-party] under Rule 37, as that Rule does not apply to a motion to compel compliance with a subpoena pursuant to Fed. R. Civ. P. 45.") (citation and quotation marks omitted).

The Court notes that although the law is not crystal clear on this point, there is some doubt about the Bankruptcy Court's authority to impose attorney's fees—even with a properly supported contempt finding—without an explicit finding of bad faith. Rule 45(g), under which the Bankruptcy Court held Dunne in contempt, is silent on what type of sanctions are authorized. *Davis v. Speechworks Int'l, Inc.*, No. 03-CV-533S(F), 2005 WL 1206894, at *5 (W.D.N.Y. May 20, 2005) ("[Rule 45] contains no express provision for awarding attorneys' fees or sanctions to a party that has prevailed on a motion to compel compliance with a subpoena *duces tecum*."). Some district courts have nonetheless summarily found attorney's fees authorized as a result of a contempt finding under Rule 45. *See Gesualdi*, 2016 WL 2654068, at *2 (ordering attorney's fees as sanction after finding non-party in contempt under Rule 45(g)); *In re Corso*, 328 B.R. at 385 (affirming bankruptcy's court award of sanctions and attorney's fees for Rule 45 contempt). But in cases in which there is no statute or rule expressly authorizing an award of fees, and thus where the court must rely only on its "inherent authority," the Court of Appeals has indicated that an explicit finding of bad faith is required for an award of attorney's fees. *See In re JJE & MM Grp. LLC*, 692 F. App'x 43, 45 (2d Cir. 2017) ("While bankruptcy courts can impose compensatory sanctions for civil contempt . . . a bad faith finding is required "when a court imposes attorney's fees as a sanction . . . ."); *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) ("Our case law is clear that a district court may not impose attorney's fees as a sanction without first making an explicit finding that the sanctioned party, whether a party or a party's counsel, acted in bad faith in engaging in the sanctionable conduct."); *but see Weitzman v.*

16

*Stein*, 98 F.3d 717 (2d Cir. 1996) ("[W]hile willfulness may not necessarily be a prerequisite to an award of fees and costs [following a contempt finding on attorney], a finding of willfulness strongly supports granting them."). In the absence of clear guidance on the question whether the reference to "contempt" in Rule 45(g) authorizes an award of attorneys' fees without a finding of bad faith, the Court believes remand for further factual findings on whether Dunne acted in bad faith is appropriate.

There may well be a basis in the record here to support a finding of bad faith (Dkt. No. 361 at Tr. 32:8–33:13 (inquiring whether Dunne's certification was credible)), which would clearly authorize attorney's fees, but the Bankruptcy Court did not make such a finding explicitly. *N. Am. Oil Co. v. Star Brite Distrib., Inc.*, 14 F. App'x 73, 75 (2d Cir. 2001) (remanding district court's imposition of attorney's fees as sanctions under Rule 45 to determine willfulness). Accordingly, the Court believes remand would be appropriate here for further findings on the issue of attorney's fees.

### C. The Bankruptcy Court's Order With Respect to Google and AT&T

Finally, Dunne challenges the component of the Bankruptcy Court's Order requiring non-parties Google and AT&T to produce all of Dunne's emails—specifically that: "the Trustee shall serve a copy of this order on the appropriate subsidiaries or divisions of Google and AT&T, and Google and AT&T shall produce all electronic mail from the accounts seandunnebb@gmail.com and seandunne366@gmail.com." (Dkt. No. 329 at 3; ECF No. 11 at 14–17.) The Order further provides that "Dunne shall cooperate in the production of the electronic mail from said accounts." (Dkt. No. 329 at 3.) Dunne argues that this remedy was improper because (1) it was beyond the scope of the subpoena and renewed motion to compel, (2) neither Google nor AT&T was given notice, and (3) the order circumvents the Stored Communications Act. (ECF No. 11 at 14–17.)

Dunne's arguments all concern the component of the Order directing the issuance of a subpoena to Google and AT&T, and so Dunne does not have standing to assert them. "In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." *See Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975). Although Dunne does claim privilege (ECF No. 11 at 19–22), he provides no basis to indicate that the two 366 and BB Gmail Accounts contained privilege information beyond his own assertion. *See, e.g., Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 RA HBP, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) ("In order for a party to have standing to challenge a subpoena served on a non-party, there must be more than 'a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive.'"). Accordingly, Dunne may not raise the arguments as to the Order's scope, notice, or the Stored Communications Act implications on Google and AT&T's behalf. *See United States Reg'l Econ. Dev. Auth.*, LLC v. Matthews, No. 3:16-CV-01093 (CSH), 2018 WL 2172713, at *8 (D. Conn. May 10, 2018) ("[A] challenge to a subpoena based on grounds of relevance or burden may only be raised by the entity to which the subpoena is directed; a party lacks standing to raise such challenges to a subpoena directed at a nonparty.")[8]

More importantly, the Bankruptcy Court did not abuse its discretion in structuring this component of the Order in this way. The Bankruptcy Court's Order cited Fed. R. Civ. P. 45(e)(1)(D), which provides for a non-party's duties in responding to a subpoena where the information is inaccessible. As discussed in note 7, *supra*, it is not clear that this provision is applicable here. (Dkt. No. 329 at 3.) Nonetheless, the Bankruptcy Court has "broad discretion

---

[8] Dunne's argument that *he* was not given notice about this component of the Order (ECF No. 11 at 15) is a non-starter, because the Bankruptcy Court described the anticipated mechanism at the hearing on the motion (Dkt. 361 at Tr. 46:9-19).

to design a remedy that will bring about compliance" through coercive sanctions. *Baez v. City of Schenectady*, No. 116CV853FJSDJS, 2017 WL 4990646, at *3 (N.D.N.Y. Nov. 1, 2017). The Bankruptcy Court should "consider several factors in calculating [coercive sanctions], including the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the contemnor's ability to pay." *Paramedics Electromedicina*, 369 F.3d at 658 (internal alterations and quotation marks omitted). Here, the Bankruptcy Court's two-part remedy was tailored to Dunne's refusal to produce *any* emails responsive to the Trustee's July 2016 subpoena. The Bankruptcy Court thus (1) permitted the Trustee to serve a subpoena for all the emails in the 366 and BB Gmail Accounts on Google and AT&T directly and (2) required that Dunne cooperate, *i.e.* give his consent to Google and AT&T. (Dkt. No. 329.) In other words, the Bankruptcy Court presented Dunne a coercive choice that would effectively bring about compliance: either cooperate with the third-party production of documents (which Dunne should have produced anyway), or risk further sanctions. While the scope of the proposed production is quite broad—covering "all electronic mail"—it is not disproportionate given Dunne's wholesale refusal to produce any emails, and it limits the burden on Google and AT&T by refraining from requiring them to screen for relevant emails. *See* Fed. R. Civ. P. 45(d)(1) (requiring third party subpoenas to avoid "imposing undue burden or expense on a person subject to the subpoena."). Finally, for the reasons discussed above, the Bankruptcy Court was free to assume that Dunne himself had access to these emails, and that he was in a position to screen them and produce only those that are responsive, and that his failure to cooperate in this manner left it with no choice but to issue an order to third parties. For all these reasons, the Bankruptcy Court did not abuse its discretion

in issuing an Order requiring Google and AT&T to produce Dunne's emails from the BB and 366 Gmail Accounts.

## IV. Conclusion

The Bankruptcy Court's Order is AFFIRMED in part and VACATED and REMANDED in part. The Bankruptcy Court did not abuse its discretion in finding that Dunne had violated the subpoena, finding Dunne in contempt, or ordering AT&T and Google to produce Dunne's emails from the BB and 366 Gmail Accounts. However, the Bankruptcy Court's imposition of attorney's fees and costs as sanctions is VACATED and REMANDED for further findings concerning Dunne's bad faith.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 27, 2018